UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ASSISTRX, INC.,

   Plaintiff,

 vs.          CASE NO. _____

THE ASSISTANCE FUND, INC.; and
OUTBOX SYSTEMS, INC., d/b/a SIMPLUS,

   Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, ASSISTRX, INC., ("ARX" or "Plaintiff"), a Delaware corporation, hereby sues Defendants, THE ASSISTANCE FUND, INC., a Delaware corporation ("TAF"), and OUTBOX SYSTEMS, INC., d/b/a SIMPLUS, a Delaware corporation ("Simplus"), and alleges:

## NATURE OF ACTION

1.  This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§101 *et seq.*, seeking injunctive relief, damages, punitive damages, attorneys' fees and costs as provided by applicable law.

## PARTIES, JURISDICTION, AND VENUE

2.  ARX is a Delaware corporation with its principal place of business at 4700 Millenia Boulevard, Suite 500, Orlando, FL 32839.

3.  TAF is a Delaware corporation with its principal place of business at 4700 Millenia Boulevard, Suite 410, Orlando, FL 32839.

4.      Simplus is a Delaware corporation with its principal place of business at 10 West Broadway #500, Salt Lake City, UT 84101.

5.      The Court has exclusive, original federal question jurisdiction pursuant to 17 U.S.C. §§ 106, 501 and 504, and 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over TAF because, *inter alia*, it is a citizen of Florida, as its principal place of business at all times has been Orlando, Florida; it committed and continues to commit the wrongful and infringing conduct alleged herein primarily in Orlando, Florida, as alleged in further detail below, its wrongful and infringing conduct has resulted in injury to ARX in Orlando, Florida, as alleged in further detail below.

7.      This Court has personal jurisdiction over Simplus under Florida Statutes §48.193(1)(a), subsections (1), (2), and (6), and applicable law, because, *inter alia*: it is a corporation registered to conduct business within the State of Florida; it has conducted business within Florida, and has appointed an agent for service of process within Florida; it committed the tortious, wrongful and infringing course of conduct alleged herein primarily or substantially within Florida and within this District; it aided, abetted, and contributed to the infringing and wrongful conduct of Defendant TAF, headquartered in this District, and of TAF's current and former employees, including Mitchell Howell ("Mr. Howell), who was then resident in this District; it performed such infringing and wrongful acts through and by means of its separate employment or retention of Mr. Howell, a Florida citizen and then a resident of this District, who resided and worked for Simplus within this District, and who committed the wrongful and infringing acts alleged herein in this District; its wrongful and infringing conduct has resulted in substantial injury to ARX within this District, as alleged in further detail below; it voluntarily

agreed to subject itself to Florida law and jurisdiction in its agreement with Defendant TAF, the agreement pursuant to which it engaged in the infringing and wrongful course of conduct alleged herein.

8.      Venue in this district is proper pursuant to 28 U.S.C. §1391, because (a) one or more defendants reside in this judicial district, and (b) a substantial part of the events and omissions giving rise to the claims, including Defendants' infringing conduct, occurred and continues to occur in this District, as alleged in further detail below.

## GENERAL ALLEGATIONS

### ARX's Copyrighted Software

9.      ARX is in the business of designing and developing software solutions that assist clients in the healthcare industry in managing workflow, billing, and multiple other processes.

10.      As is common in the software industry, many of the custom computer programs developed by ARX are built "on top of," or utilize functionality provided by, other computer programs, languages, and tools. Nevertheless, ARX has developed its own original designs, source code, object code, workflows, algorithms, designs, data structures, specifications, documentation, custom data models, and other materials which are original and separately protectable as ARX's intellectual property.

11.      ARX is the author and sole and exclusive owner of the copyright in and to the work entitled AssistRX CRM Software Platform (hereinafter, the "Software"), for which ARX obtained a federal copyright registration from the U.S. Copyright Office, Registration Number TX-8-647-868.  A true and correct copy of the copyright registration for the Software is annexed hereto as **Exhibit "A."**

12.     TAF has been a client of ARX since at least 2010.  The relationship between the companies was documented in a series of written services agreements.  The initial services agreement was entered into by and between ARX and TAF as of January 1, 2010, with an initial term expiring at the end of 2011.  In early 2012, ARX and TAF entered into a new services agreement, with an effective date of January 1, 2012.  The January 1, 2012 services agreement between ARX and TAF has been formally amended in writing several times, but its essential business terms have remained largely unchanged.  A true and correct copy of the parties' January 1, 2010 services agreement, and the amendments thereto, are attached hereto as **Composite Exhibit "B"** (collectively, the "Services Agreement").

13.     Pursuant to the Services Agreement, ARX agreed to provide a variety of services to TAF including licensing TAF to use the Software.  Services Agreement, Schedule A.

14.     In exchange, TAF agreed to pay ARX a "Monthly Management Fee," a software "Development Fee," and a "use" fee based on the number of patient transactions run through the Software.  Services Agreement, ¶2 & Schedule B.

15.     TAF has made use of versions of the Software developed by ARX in TAF's business for approximately the past ten years, since about 2010.

16.     The Services Agreement requires that it be "construed in accordance with and governed in all respects by laws of the State of Florida, without giving effect to conflict of laws principles."  Services Agreement, §8(e).

17.     In order to perform services for TAF as agreed upon in the Services Agreement, ARX created and authored the Software to be licensed to TAF pursuant to the Services Agreement.

4

**Mitchell Howell's Employment with ARX**

18.    At all relevant times, Mr. Howell was a citizen of Florida, and an individual residing and working within this District, in the Orlando, Florida area.  On or about July 6, 2015, ARX offered Mr. Howell fulltime employment as a .NET Developer, with full benefits, and a starting salary of $85,000.00 per year.

19.    Mr. Howell accepted ARX's offer of employment on or about July 20, 2015.  A true and correct copy of Mr. Howell's counter-signed employment offer is attached as **Exhibit "C"** hereto.

20.    Mr. Howell's duties while employed by ARX included, *inter alia*, multiple tasks and functions related to computer software development including development of the Software. These duties including writing and assisting in the development of computer source code to serve the specific business needs of ARX's clients, including TAF, and a variety of tasks related to and associated with development including, but not limited to, the design and development of integrations, workflows, algorithms, designs, data structures, data mapping, data models, object models, custom Salesforce objects, specifications, design documents, and related deliverables, work product, technical specifications, and documentation. A true and correct copy of Mr. Howell's job description is attached as **Exhibit "D"** hereto.

21.    On or about July 13, 2015, Mr. Howell signed an acknowledgement of ARX's ownership rights to "all intellectual property rights, including all trade secrets, U.S. and international copyrights, patentable inventions, and other intellectual property rights in any programming, documentation, technology, or other work product" created during the course of his employment with ARX (the "Acknowledgment").  The Acknowledgment also made clear

that all such work product created by Mr. Howell while employed by ARX was a "work for hire," and thus owned exclusively by ARX. Regardless, the Acknowledgement effectively assigned any and all rights to such work product to ARX. In the Acknowledgement, Mr. Howell also agreed not to use or disclose at any time "such technical information as … computer software in source code form, and other proprietary technology." A true and correct copy of Mr. Howell's Acknowledgment is attached as **Exhibit "E"** hereto.

22.     On or about July 23, 2015, Mr. Howell signed a confidentiality and non-disclosure agreement (the "Confidentiality and Non-Disclosure Agreement"), which further obligated him to keep confidential and not disclose ARX's confidential information to any third parties. Among multiple confidentiality obligations agreed to by Mr. Howell therein, he agreed: (i) not to disclose any confidential ARX information except to fulfill his work assignments; (ii) not to remove or copy or access any protected information except to fulfill his work assignments; (iii) not to download or make copies of any software or applications without ARX's authorization. (*See, e.g.*, ¶¶ 6-14.)   A true and correct copy of the Confidentiality and Non-Disclosure Agreement is attached as **Exhibit "F"** hereto.

23.     As is common in the software consulting industry, ARX developed the Software for TAF using various other computer programs, languages, and tools including Salesforce; however, ARX created a highly-customized implementation of Salesforce for TAF including, but not limited to, developing a highly-customized data model, custom Salesforce objects, custom Salesforce workflows, algorithms, data structures, integrations, and other algorithms, designs, data structures, data mapping, data models, object models, design documents, specifications, and related deliverables, work product, and documentation.

24.     The resulting Software allowed TAF to identify, enroll, and serve thousands of patients suffering from serious illnesses. With the help of donations from pharmaceutical companies, TAF provided financial assistance to such patients including assistance in accessing drug therapies distributed by TAF's donors.  The Software helped TAF manage and automate the processes necessary for providing this assistance including, *inter alia*, determining a patient's eligibility for assistance, offering and enrolling the patient in programs specific to their illness and prescribed drug therapies, validating and processing reimbursement claims from pharmacies in real time as the patient accessed such prescribed drug therapies, providing and managing debit cards issued to patients for purchase of other prescribed equipment and expenses related to their medical treatment, and managing budgets and funding for each individual patient, program, and the organization as a whole to ensure TAF had the donations needed to service the patients, programs, and other expenses.

25.     In the course of his employment with ARX, Mr. Howell designed and developed and assisted in the design and development of multiple versions of the Software including, but not limited to, the design and development of integrations, workflows, algorithms, designs, data structures, data mapping, data models, object models, custom Salesforce objects, design documents, specifications, and related deliverables, work product, and documentation for various ARX clients including extensive design and development work for TAF.

26.     In particular, in the course of his employment with ARX, Mr. Howell was the person primarily responsible for integrating the Software with other computer software applications and data sources used in the Software (the "TAF Integrations").   The TAF

Integrations designed and developed by Mr. Howell included, but were not limited to, integrations with:

(a)   a web application that allowed patients to provide TAF with personal, financial, health, and other information needed for the enrollment process;

(b)   consumer credit bureaus, including TransUnion, to determine the patient's eligibility for assistance;

(c)   third party administrators, including FHA-TPA, to determine the patient's eligibility for certain medical benefits and process medical benefit transactions for the patient;

(d)   prescription claims processing services, including PDMI, to validate and process reimbursement claims for purchase of drug therapies in real time; and

(e)   banking institutions, including PNC Bank and First Community Bank, to provide and manage debit cards issued to patients and other bank accounts for individual patients and the organization as a whole.

27.   In furtherance of the TAF Integrations, in the course of his employment with ARX, Mr. Howell designed and developed and assisted in the design and development of workflows, algorithms, designs, data structures, data mapping, data models, object models, custom Salesforce objects, design documents, specifications, and related deliverables, work product, and documentation included in the Software.

28.   In addition, in the course of his employment with ARX, Mr. Howell was intimately involved with, exposed to, or participated in the design or development of the highly customized data model, custom Salesforce objects, custom Salesforce workflows, algorithms, data structures ARX developed for the Software.  Mr. Howell intimately understood the internal data structures used in the Software, which are unique, proprietary to ARX, and not visible to users of the Software, including the highly-customized data model and custom Salesforce objects

designed and developed by ARX for the Software (collectively, the "ARX Internal Salesforce Data Model").

29.     In the course of his employment with ARX, Mr. Howell was the person at ARX primarily responsible for mapping the data received from, or sent to, the TAF Integrations to the ARX Internal Salesforce Data Model including transformation, processing, algorithms, or other manipulation of such data.

### "Spring Cleaning" Project & Dispute Over Rights to Software

30.     In or about late 2017 and continuing into the spring of 2018, ARX and TAF discussed the need to update the Software to improve its functionality and efficiency to better serve the unique demands of TAF's business.  The parties came to refer to this project as the "Spring Cleaning."  To prepare for the Spring Cleaning project, ARX had multiple employees, including Mr. Howell, analyze the Software and meet with TAF regularly to discuss TAF's business needs and to try to formulate new software solutions to enhance and improve upon the Software in various ways.

31.     In the course of developing the Spring Cleaning project, ARX submitted written proposals or Statements of Work ("SOWs") to TAF, which, inter alia, outlined the various tasks and services to be performed, the schedule or timetable for their completion, and the proposed costs for such services.   The SOWs that ARX submitted to TAF for the Spring Cleaning project reflected the parties' mutual and longstanding understanding that, as had always been the case under the Services Agreement, ARX would own the intellectual property rights to the custom software it would develop to enhance and upgrade the existing Software it had developed pursuant to the Services Agreement.

32.     TAF, however, apparently wanted to change the parties' nearly 10-year relationship, and wanted to force ARX to agree that, going forward, TAF would own the rights to the Software and any other software ARX developed or created for use by TAF.  Thus, in or about June, 2018, TAF responded to ARX's SOW with its own proposed Term Sheet, in which TAF sought to include a new term and condition that would effectively transfer to TAF the ownership of the intellectual property rights in and to the Software and the custom software to be developed by ARX as part of the Spring Cleaning project.   ARX immediately rejected this proposal and reiterated that ARX had always been the owner of all rights in and to the Software and related work product that it created and developed and implemented for TAF. TAF and ARX continued to negotiate and submit proposals and counter-proposals to one another over the summer and fall of 2018.

33.     In or about September, 2018, TAF sent a revised Term Sheet to ARX retreating from its earlier request to own all rights to the Software and any new or derivative works to be developed, and instead requested that ARX and TAF agree to "jointly" own the Software and the custom software and derivative works to be developed.  ARX also flatly rejected this proposal as inconsistent with the parties' prior Services Agreements, and the amendments thereto, as well as inconsistent with ARX's business model as a developer of software that it licenses to multiple clients.

34.     Unbeknownst to ARX, while TAF was purporting to negotiate with ARX in good faith, and continuing to send ARX proposals for the Spring Cleaning project, TAF was secretly soliciting and negotiating with third-party vendors, including Simplus, that TAF planned to hire

to create a software solution to replace the Software (the "Replacement Software"), and to allow TAF to effectively terminate, by non-renewing, the Services Agreement with ARX.

35.     Further, in making these proposals seeking ownership, or "joint ownership," of the Software, TAF proposed that ARX permit TAF to hire some of ARX's computer software developers – specifically including Mr. Howell.  In TAF's proposed Term Sheet to ARX in June, 2018, and again in September, 2018, TAF expressly acknowledged its awareness that Mr. Howell and other ARX employees were legally bound by contractual restrictions in their employment agreements. ARX rejected TAF's requests to release ARX employees, including Howell, from their legal and contractual obligations to ARX.

36.     Despite TAF's awareness of Mr. Howell's legal and contractual obligations to ARX, and despite ARX's unequivocal rejection of TAF's proposed hiring of Mr. Howell, TAF nonetheless willfully went forward with its plans to arrange for its vendor, Simplus, to hire Mr. Howell for the purpose of assisting Simplus and TAF in designing and developing the Replacement Software, and then for TAF itself to ultimately hire Mr. Howell directly for the purposes of maintaining the Replacement Software.

**TAF Secretly Hires Simplus to Create the Replacement Software**

37.     In the summer and fall of 2018, all the while purportedly negotiating in good faith with ARX over a proposed extension of the Services Agreement, TAF was in talks with Simplus, with the goal of hiring Simplus to effectively replace ARX.

38.     On or about August 28, 2018, approximately one week after Mr. Howell informed ARX he was resigning, TAF and Simplus agreed upon an SOW for development of the Replacement Software.

39.    On or about September 4, 2018, one day before Mr. Howell's final day working at ARX, TAF and Simplus executed a Master Services Agreement, purportedly for the purpose of building a software solution to replace the Software that ARX licensed to TAF.

**Mr. Howell's Departure from ARX**

40.    On or about August 22, 2018, Mr. Howell emailed ARX management to advise of his plan to resign his employment with ARX (the "Resignation Email"), in which he acknowledged his extensive role in creating, designing and developing the Software for ARX's client, TAF.  A redacted, true and correct copy of Mr. Howell's Resignation Email is attached as **Exhibit "G"** hereto.

41.    Mr. Howell's last day of employment with ARX was on or about September 5, 2018 – the day after TAF had entered into the Master Services Agreement with Simplus to design and develop the Replacement Software.

42.    Although the Resignation Email indicates that Mr. Howell "accepted a position with Orange Lake Resorts as a Senior .NET engineer," unbeknownst to ARX, shortly thereafter, on or about October 1, 2018, at the direction of TAF, Simplus hired Mr. Howell as a contractor, to assist with the design and development of the Replacement Software.  In particular, Mr. Howell was hired to assist in the design and development of integrations for the Replacement Software – precisely the same work he had been performing in connection with the Software while employed by ARX.

43.    Simplus hired or retained Mr. Howell at the specific direction and/or suggestion of TAF's senior management, Mr. Steve Alsene.  Mr. Alsene initiated contact with Mr. Howell and suggested that Mr. Howell seek employment with Simplus.  Mr. Alsene and TAF directed or

suggested that Simplus hire or retain Mr. Howell, to assist Simplus in designing and developing the Replacement Software, with the ultimate goal that TAF would then later hire Mr. Howell as an employee to assist TAF with the implementation and maintenance of the Replacement Software.

44.    Mr. Howell was then hired as an independent contractor by Simplus to assist with the design, creation, development and implementation of the Replacement Software.

45.    Simplus was and is a direct competitor of ARX, in particular with respect to the design and development of custom software solutions based on Salesforce.

46.    In performing work as an independent contractor for Simplus (for the benefit of its client, TAF), Mr. Howell and Simplus directly, willfully and blatantly infringed upon ARX's copyright in and to the Software by, *inter alia*:

    a.    copying portions of the source code of the Software;

    b.    distributing the source code of the Software to Simplus for its use;

    c.    copying and distributing design information and documentation related to the Software to Simplus and TAF including, but not limited to, information and documentation related to the Software's integrations, workflows, algorithms, data structures, data mapping, data models, object models, custom Salesforce objects, specifications, and source code; and

    d.    creating, and assisting Simplus and TAF in creating, infringing, derivative works from the Software.

Mr. Howell performed these infringing acts at the direction and control of, and for the financial benefit of, both TAF and Simplus. At all times, Mr. Howell performed these tortious and

13

infringing acts, at the direction of TAF and Simplus, while residing in the Orlando, Florida area, and for the benefit of TAF, headquartered in Orlando. Both TAF and Simplus aided, abetted, contributed to, directed, and induced Mr. Howell's tortious and infringing conduct, and both TAF and Simplus benefited and profited from such infringing conduct.

47.    Further, after Mr. Howell had worked for Simplus as an independent contractor for approximately two months, from October 1, 2018 through the end of November, 2018, TAF then directly hired Mr. Howell as a TAF employee, on or about December 4, 2018. TAF hired Mr. Howell in furtherance of its plan to make unauthorized and infringing use of ARX's copyrighted works including the Software and to create and use infringing derivative works of the Software.

48.    While working as an employee of TAF, Mr. Howell directly, willfully, and blatantly infringed upon ARX's copyright in and to the Software by, *inter alia*:

    a.  copying portions of the source code of the Software;

    b.  distributing portions of the source code of the Software to Simplus for TAF's benefit and use;

    c.  copying and distributing design information and documentation related to the Software to Simplus and TAF including, but not limited to, information and documentation related to the Software's integrations, workflows, algorithms, data structures, data mapping, data models, object models, custom Salesforce objects, specifications, and source code; and

    d.  creating, and assisting Simplus and TAF in creating, infringing, derivative works from the Software.

Mr. Howell performed these infringing acts at the direction and control of, and for the financial benefit of, both TAF and Simplus.  At all times, Mr. Howell performed these tortious and infringing acts while residing in the Orlando, Florida area, for the benefit of TAF, headquartered in Orlando. Both TAF and Simplus aided, abetted, contributed to, directed, and induced Mr. Howell's tortious and infringing conduct, and both TAF and Simplus benefited and profited from such infringing conduct.

49.    TAF continued to employ Mr. Howell until ARX discovered Mr. Howell's violation of ARX's Employment Agreements, and threatened TAF with litigation, whereupon TAF terminated Mr. Howell on or about December 21, 2018.  Thereafter, Mr. Howell left the country to reside temporarily in the Philippines.

50.    During the course of his employment by Simplus, Mr. Howell, TAF and Simplus infringed ARX's copyrighted software by, *inter alia*, accessing, copying, distributing and making use of the Software in the course of creating the infringing Replacement Software for TAF's use and benefit. Mr. Howell provided both Simplus and TAF with unfettered access to and copies of portions of the Software. Indeed, Mr. Howell at various times while working for Simplus *actually cut and pasted portions of ARX's source code for the Software into design documents he gave to Simplus*, allowing Simplus free access to that source code to copy, use, reference, modify, distribute, and share freely, in the course of creating the Replacement Software, with the assistance of and at the direction of TAF.

51.    TAF and Simplus have therefore each knowingly, intentionally and willfully infringed ARX's copyrights in the course of designing, developing, and implementing the Replacement Software.  Indeed, both Simplus and TAF representatives were personally aware of

Mr. Howell's access to and use of the Software, and both Defendants sought to and did benefit from and exploit the economic value of same.

52.    For example, employees of Simplus and officers of TAF both participated in multiple online or virtual meetings with Mr. Howell wherein they solicited from Mr. Howell, and Mr. Howell provided at their request, detailed information regarding the design of the Software and its source code.  Mr. Howell participated in these meetings with Simplus and TAF by telephone or through virtual meetings, while Mr. Howell was residing and working in the Orlando, Florida area.  Upon information and belief, TAF's officers and personnel who participated in these meetings and calls between Simplus, TAF and Mr. Howell, also did so from Orlando, Florida.

53.    Simplus, as the employer or principal of Mr. Howell, is directly and vicariously liable for the misconduct and wrongdoing by its agent, Mr. Howell, in the course of Mr. Howell's performance of his job duties and responsibilities for Simplus in connection with the creation, design, development and implementation of the Replacement Software for TAF, as set forth herein, which conduct was directed or controlled by Simplus, and for which Simplus reaped substantial economic gain, including payments from TAF in the hundreds of thousands of dollars.

54.    TAF, as the employer or principal of Mr. Howell, is directly and vicariously liable for the misconduct and wrongdoing by its agent and employee, Mr. Howell, in the course of Mr. Howell's performance of his job duties and responsibilities for TAF in connection with the creation, design, development and implementation of the Replacement Software for TAF, which conduct was directed or controlled by TAF, and for which TAF reaped substantial economic

gain, including savings to TAF of potentially millions of dollars in payments otherwise owing to ARX, and including TAF's receipt of millions of dollars in gross receipts in the course of using the Replacement Software in the daily operations of its business.

55.    Mr. Howell, TAF and Simplus have all financially gained and benefited from their infringing conduct as alleged herein, including without limitation as follows:  TAF paid Simplus at least several hundred thousand dollars for its services including its infringing conduct in assisting with the creation and implementation of the Replacement Software; TAF deprived ARX of the compensation ARX was rightfully due under the Services Agreement by terminating its contractual relationship with ARX and thus TAF profited and benefited from infringing the Software while saving itself from making any payments for same of up to possibly millions of dollars, as required under the Services Agreement, depriving ARX of the full economic benefit of its sole and exclusive rights in and to the Software.

**TAF Terminates the Services Agreement**

56.    In the fall of 2018, ARX suspected that TAF, unbeknownst to ARX, was infringing or planning to infringe the Software by, *inter alia*, improperly giving vendors access to it for purposes of infringing it and making infringing derivative works from it.  Accordingly, ARX demanded that TAF disclose if it was doing this and agree to confirm in writing that ARX owns the source code and copyright in and to the Software, including in a letter sent by ARX to TAF on September 13, 2018.  TAF, however, falsely claimed that it was not engaging in any wrongful conduct, and that it was not giving any vendors access to ARX's source code, all the while it was aware that Mr. Howell was doing exactly that in connection with his work for Simplus on the Replacement Software.  TAF wrongfully refused to acknowledge ARX's

ownership of the Software and continued to propose that ARX agree to "joint ownership" and other terms.  Unbeknownst to ARX, TAF was blatantly and flagrantly infringing upon ARX's copyrights in and to the Software, aiding, abetting, and inducing Mr. Howell and Simplus to infringe ARX's copyrights, in willful disregard of ARX's legal rights in its intellectual property.

57.    As a result of this dispute, TAF ultimately refused to comply with its financial obligations under the Services Agreement for the remainder of 2018, and refused to renew the Services Agreement upon its stated expiration at the end of 2018, effectively terminating the Services Agreement and ending any license, right, authorization it had thereunder to continue to make any use whatsoever of the Software.

58.    In December, 2018, ARX specifically advised TAF in writing that ARX had obtained a copyright registration for the Software and warned TAF against any unauthorized use or infringement of ARX's sole and exclusive copyright in and to the Software.  In response, TAF falsely claimed that it was not infringing any of ARX's copyrights or intellectual property rights whatsoever, and that it would no longer make any use whatsoever of the Software as of January 1, 2019.

### TAF Continues to Make Unauthorized, Infringing Use of the Software For Months After Its License Terminates, Even After ARX Sues

59.    Under the Services Agreement, ARX had licensed to TAF the right to make use of the Software under the financial terms and other terms and conditions set forth therein.

60.    The Services Agreement expired on its face on December 31, 2018.

61.    TAF expressly advised ARX that it would not renew or extend the license permitted under the Services Agreement, and rejected all proposals ARX made for any such renewal or extension.

62. TAF falsely and deceptively claimed to ARX that it no longer had any need to make any use of the Software, because as of January 1, 2019, TAF would exclusively make use of the Replacement Software purportedly developed independently by Simplus.

63. Unbeknownst to ARX at that time, the Replacement Software comprised an infringing, derivative work based on the Software, and blatantly infringed upon ARX's copyrights in and to the Software, including ARX's exclusive rights to make derivative works from the Software.

64. ARX filed a separate action in state court on February 2, 2019, alleging state law causes of action. At the time of filing this suit, ARX generally believed that TAF had effectively completed its migration to the Replacement Software and was no longer utilizing ARX's Software, and thus ARX was then unaware of TAF's infringement of ARX's copyrights.

65. Nevertheless, several months after filing the state court action, ARX thereafter learned that TAF and Simplus were unable to implement the Replacement Software as planned by January 1, 2019, and that, instead, for several months thereafter, TAF continued to make unauthorized, infringing, and illegal use of the Software for the day-to-day operations of TAF's business, without informing or seeking authorization or any license from ARX, and without providing any compensation whatsoever to ARX.

66. TAF's conduct in continuing to make unauthorized use of ARX's Software for several months after the expiration of the Services Agreement, and without the consent, knowledge, permission, license or authorization of ARX, without compensation to ARX, and while concealing such conduct from ARX, amounts to willful infringement of ARX's copyrights in and to the Software.

67.     Upon information and belief, Simplus aided and abetted TAF's continuing unauthorized and infringing use and exploitation of the Software throughout 2019.

## COUNT I
## COPYRIGHT INFRINGEMENT AGAINST TAF

68.     This is an action against Defendant TAF for Copyright Infringement pursuant to 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

69.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth herein.

70.     ARX is the sole and exclusive owner of the entire right, title and interest in and to the Software and the copyright registration for the Software annexed hereto as **Exhibit "A."**

71.     TAF's acts complained of herein have violated and continue to violate ARX's exclusive rights pursuant to 17 U.S.C. §106, in that, *inter alia:*

  a. TAF continued to access, copy, distribute, and make unauthorized use of the Software for financial gain well after the expiration and termination of the Services Agreement, without the consent, authorization, license, or permission of ARX, and without compensation to ARX,

  b. TAF solicited and directed the unauthorized copying, distribution, and/or publication of design information and documentation related to the Software including, but not limited to, information and documentation related to the Software's integrations, workflows, algorithms, data structures, data mapping, data models, object models, custom Salesforce objects, specifications, and source code;

    c.   TAF created, contributed to, or directed the creation of unauthorized, derivative works based upon the Software, and has made use of said works, including the Replacement Software, in the course of its business, for financial gain, without the consent, authorization, license, or permission of ARX, and without compensation to ARX.

72.    TAF's acts constitute willful, knowing, and intentional copyright infringement, in violation of the Copyright Act, 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

73.    Plaintiff has suffered, and unless TAF is enjoined, will continue to suffer damages and harm including harm for which there is no adequate remedy at law.

**COUNT II**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST TAF**

74.    This is an action against Defendant TAF for Contributory Copyright Infringement pursuant to 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

75.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth herein.

76.    By reason of the foregoing, TAF induced, participated in, directed, controlled, aided and abetted, and profited from Mr. Howell's and TAF's infringement of ARX's copyrights in and to the Software.

77.    TAF's foregoing misconduct was willful, intentional, deliberate, malicious and in complete disregard for ARX's rights in and to its intellectual property.

78.    As a result of TAF's foregoing misconduct, ARX suffered, and unless Defendants are enjoined, will continue to suffer damages and harm, including harm for which there is no adequate remedy at law.

## COUNT III
## <u>VICARIOUS COPYRIGHT INFRINGEMENT AGAINST TAF</u>

79.    This is an action against Defendant TAF for Vicarious Copyright Infringement pursuant to 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

80.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth herein.

81.    By reason of the foregoing, TAF profited from Howell's and Simplus's copyright infringement while refusing to exercise TAF's rights to stop or limit the infringement. TAF, as the principal that had retained its vendor, Simplus, to create the Replacement Software for TAF's benefit and use, had the contractual right to put a stop to Simplus's infringing conduct as alleged above, and the infringing conduct of Simplus's independent contractor and agent, Mr. Howell, but declined to do so.  For example, TAF's officers and employees were aware that Mr. Howell had improperly copied, stored and retained the Software upon his departure from ARX, and that Mr. Howell was accessing the Software and using it while performing services for TAF's benefit, and even copying, cutting and pasting portions of the Software into documents for use by Simplus and TAF in the course of creating the Replacement Software, but nonetheless TAF failed and refused to make any effort to stop or prevent such infringement. Instead, TAF condoned and encouraged this infringement, paid Simplus for engaging in such infringing conduct, and ultimately profited from and reaped the benefits of this infringement.  TAF continues to profit and gain from this infringing conduct by, inter alia, continuing to make use of the infringing Replacement Software in the course of its business.

82.    TAF's foregoing misconduct was willful, intentional, deliberate, malicious and in complete disregard for ARX's rights in and to its intellectual property.

83.    As a result of the foregoing misconduct, ARX suffered, and unless Defendants are enjoined, will continue to suffer damages and harm, including harm for which there is no adequate remedy at law.

**COUNT IV**
**COPYRIGHT INFRINGEMENT AGAINST SIMPLUS**

84.    This is an action against Defendant Simplus for Copyright Infringement pursuant to 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

85.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth herein.

86.    ARX is the sole and exclusive owner of the entire right, title and interest in and to the Software and the copyright registration for the Software annexed hereto as **Exhibit "A."**

87.    Simplus's acts complained of herein have violated and continue to violate ARX's exclusive rights pursuant to 17 U.S.C. §106, in that, *inter alia*:

a.    Simplus, by and through its employee or contractor Mr. Howell, and its other employees, and without the consent, authorization, license, or permission of ARX, and without compensation to ARX, accessed, copied, distributed, and made unauthorized use of the Software, including source code, design information, and documentation;

b.    Simplus created or contributed to the creation of unauthorized, derivative works based upon the Software including the Replacement Software, for financial gain, without the consent, authorization, license, or permission of ARX, and without compensation to ARX; and

c. Simplus solicited and directed the unauthorized copying, distribution, and/or publication of design information and documentation related to the Software including, but not limited to, information and documentation related to the Software's integrations, workflows, algorithms, data structures, data mapping, data models, object models, custom Salesforce objects, specifications, and source code.

88. Simplus's acts constitute willful, knowing, and intentional copyright infringement, in violation of the Copyright Act, 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

89. Plaintiff has suffered, and unless Simplus is enjoined, will continue to suffer damages and harm including harm for which there is no adequate remedy at law.

## COUNT V
## CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST SIMPLUS

90. This is an action against Defendant Simplus for Contributory Copyright Infringement pursuant to 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

91. Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth herein.

92. By reason of the foregoing, Simplus induced, participated in, directed, controlled, aided and abetted, contributed to, and profited from Mr. Howell's and TAF's infringement of ARX's copyrights in and to the Software.

93. Simplus's foregoing misconduct was willful, intentional, deliberate, malicious and in complete disregard for ARX's rights in and to its intellectual property.

94.     As a result of Simplus's foregoing misconduct, ARX suffered, and unless Defendants are enjoined, will continue to suffer damages and harm, including harm for which there is no adequate remedy at law.

**COUNT VI**
**VICARIOUS COPYRIGHT INFRINGEMENT AGAINST SIMPLUS**

95.     This is an action against Defendant Simplus for Vicarious Copyright Infringement pursuant to 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law.

96.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 67 as though fully set forth herein.

97.     By reason of the foregoing, Simplus profited from Howell's copyright infringement while refusing to exercise its rights to stop or limit the infringement. Simplus, as the principal or employer of Mr. Howell, had the contractual right to put a stop to Simplus's infringing conduct as alleged above, but declined to do so.  For example, Simplus's officers and employees were aware that Mr. Howell had improperly copied, stored and retained the Software upon his departure from ARX, and that Mr. Howell was accessing the Software and using it while performing services for Simplus's benefit, and even copying, cutting and pasting portions of the Software into documents for use by Simplus and TAF in the course of creating the Replacement Software, but nonetheless Simplus failed and refused to make any effort to stop or prevent such infringement. Instead, Simplus condoned and encouraged this infringement, was paid by TAF for engaging in such infringing conduct, and ultimately profited from and reaped the benefits of this infringement.

98.     Simplus's foregoing misconduct was willful, intentional, deliberate, malicious and in complete disregard for ARX's rights in and to its intellectual property.

25

99.     As a result of the foregoing misconduct, ARX suffered, and unless Defendants are enjoined, will continue to suffer damages and harm, including harm for which there is no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment against Defendants TAF and Simplus, jointly and severally, for, *inter alia*, damages, punitive damages, costs and attorneys' fees recoverable under law, including without limitation all recoverable profits of Defendants, all losses to Plaintiff, or if elected at trial statutory damages, as available under the Copyright Act, 17 U.S.C. §§ 106, 501, and 504, *et seq.*, and applicable law, and requests the Court enter an injunction enjoining Defendants, its officers, directors, employees, agents, servants, independent contractors, and anyone aiding, abetting or acting in concert or participation with Defendants, from any further acts of infringement of ARX's copyrights in any manner whatsoever.

## Jury Trial Demand

ARX hereby demands a trial by jury for all claims so triable.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
By*: s/Gregory W. Herbert*
Gregory W. Herbert, Esq.
Florida Bar No. 111510
herbertg@gtlaw.com
Joshua R. Brown, Esq.
Florida Bar No. 826391
brownjr@gtlaw.com
Linda M. Reck, Esq.
Florida Bar No. 669474
reckl@gtlaw.com
**GREENBERG TRAURIG, P.A.**
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone No. (407) 420-1000
*Counsel for Plaintiff*

26

**<u>Exhibits</u>**
Exhibit A – Copyright Registration
Exhibit B – Service Agreement and Amendments
Exhibit C – M. Howell's Counter-Signed Employment Offer
Exhibit D – M. Howell's Job Description
Exhibit E – Acknowledgment
Exhibit F – Confidentiality and Non-Disclosure Agreement
Exhibit G – M. Howell's Resignation Email